Mr. Slepin, you may proceed. You look familiar. Good morning, Your Honors. Good to see you again. Again, I'm going to attempt to reserve four minutes. I wasn't very successful last time, but I'll see how it goes. That was probably our fault. Okay, I'm Eric Slepin on behalf of plaintiffs. This is a Social Security disability claim. This matter has had a very tortuous procedural history. I have a question. I couldn't tell from the record. How long did your client work before the onset of her problems? She worked many years prior to. Well, many, but I know it's many. I'd have to pull out the earnings record, which is located at page 112 of the transcript. I can pull it out. But I believe she had a 12-year earning history prior to the date of disability. She had worked prior to that as well. It just wasn't consistent. That's based on my recollection. I'm not giving that as a representation to the court. Okay. But I will note that in the decision on benefit, the ALJ and the district court actually indicated that the onset date of disability or the last day of work was in 1978, and that's just totally incorrect. We believe it was a typo from the administrative law judge. But the record reflects that she worked right up until 1997. That's confirmed by that earnings record at page 112 of the transcript. So how old is she now? Currently? Yes. Let's see. She's nearing 60 now. She was born in 1951, so she's 60. Okay. At the time of disability, she was 50, and she has a number of medical impairments, but most severe is her lung disease. And we believe that the administrative law judge did not properly weigh both the subjective complaints as well as the medical source opinion evidence in this manner. If you look at how he handled the subjective complaints, Your Honors, he gave three reasons which we do not believe to be clear and convincing or specific and legitimate. First, he says that the claimant was noncompliant. We showed in our briefing there's just no indication of noncompliance. And in the reply, the defendant doesn't even allege that there's a noncompliance issue. Well, the noncompliance was apparently was that her weight in terms of that she gained, I guess, 60 pounds. But from your perspective, she quit smoking and she was on steroids, and so what could she do? Absolutely correct, Your Honor. Is that the evidence of noncompliance? The judge never says it. He never specifically says what the noncompliance is. And that was the question that I had for you, and it's along the same lines. Is your argument in this case, and perhaps it's both, is your argument in this case that the ALJ just didn't document why he found against your client as opposed to just using conclusive rephrases? In other words, he said she was noncompliant, but I don't see a citation to the record that allows me to go back to the record and say here's an instance of noncompliance. Right. We're supposing it's this weight issue, but the answer to your question, it's both. So the judge didn't give us the information. We have to attempt to infer it. The only thing I could see is this weight gain issue, but it's a known side effect from the steroids. And she's been on it for a very, very long time. She developed the osteoporosis. She developed mouth problems, teeth problems. She needs her tooth pulled. I mean, it's quite severe. She'd been in and out of the hospital for her breathing problems. So which of her conditions is not controlled by medication, and where is that indicated in the record? I do not believe that her asthma, her, well, COPD you can't really control by medication. But the COPD, the asthma, and the reactive airway disease is never fully controlled. What they do is with the prescription of the steroids as well as the use of the SVN machine and the inhalers, and important to this case is how she handles her daily routines and how often she goes out, these symptoms are reduced, but they're never resolved. She's always going to be on these SVN machines and these inhalers. The doctor that the defendant hired to do a consultation indicated that hopefully with treatment they would get better control and she would improve. But there is no cure for the COPD. Her asthma, I don't believe asthma can be cured, but hers certainly wasn't. She was in and out of the hospital. She developed recurrent pneumonia as a result of her breathing difficulties. And unfortunately it was complicated by these other factors as well. She developed the osteoporosis, which made her condition worse. She developed the cervical mass and had some neck pain that went along with it. She was ultimately diagnosed with fibromyalgia by her rheumatologist. She had secondary depression, which we believe is a significant issue that the administrative law judge overruled. But when we look at the credibility, you know, again, he doesn't cite us to what the noncompliance is. And really no doctor is writing she's noncompliant with treatment. They understand that she quit smoking, that she's on these steroids and that, you know, she's doing what she can. Can I get – let me ask you the first question I asked you slightly differently. It strikes me that there might be two ways that you could prevail in this case, and I'm trying to figure out which way you're arguing or if you're arguing both. One is just simply that as a matter of form, the ALJ wasn't specific enough in rejecting your client's credibility and finding that she wasn't disabled. The second is that the record simply wouldn't support that conclusion in any event. I assume you're making both arguments. Absolutely. But if you prevail on the first one, shouldn't we remand to the ALJ to see if he can finally get it right as a matter of form so we get a reviewable decision? The short answer is no, I don't believe that you should remand for additional proceedings to resolve the issue as to whether there's citation to specific evidence and give the administrative law judge an opportunity to go back and cite that. And I have some very good reasons why I don't think that remedy would be appropriate in that case. Well, I know the reason – one of them is you're going to say is it keeps coming up here and then it keeps going back, but is that really a good – I mean, yes, that's a reality of the situation, but in terms of it seems that in a lot of areas we get slapped down when it's something that the ALJ could conceivably correct, you know, that the higher courts don't like us making the ultimate determinations a lot of times. So just because we're sick of someone getting something wrong or not getting it as correctly, is that a good enough reason? Well, I'm not asking you to find that the claimant is disabled. When a court remands for a computation of benefits, the court is not making a disability determination. What the court is doing is they're saying that we have to accept as true the evidence that was improperly considered. So to answer your question, there is not just the length of time. And in this case, it's been 15 years. But that's not the only thing. But essentially, aren't you – but essentially, you're asking us to do that because if it's just for computation, then – that we're saying she's disabled, right? No. I don't think the court is ruling on a disability issue. And I'll tell you why that's very significant. Well, why would someone just – why would you compute benefits if a person isn't disabled? Well, we're accepting – you have to go through the process. So you have to accept that the evidence is true. And if it establishes disability, the remand's a computation of benefits. So what the court's doing is not saying you're disabled. The court's saying if we assume the evidence is true, the Social Security Administration would have to find an award of benefits. The – That gets us back to the credit as true rule, which your opponent would love to get in front of more than three of us. Yes. Does the evidence establish her disability wholly apart from her claim, her testimony? In other words, are there doctors in this case? Yes. So we wouldn't necessarily have to rely on the credit as true rule to find that your client had established her disability through objective medical evidence and there wasn't objective medical evidence to the contrary? Or am I overstating? No. You know, I'll give you an honest opinion, even though it may not weigh in my client's favor. If the court finds that the administrative law judge failed to properly consider the opinion of the treating physician, then the court is to accept that evidence as true. So you're back into the same situation where it's a question of crediting the evidence that was not properly considered as true. And back to the topic we talked about yesterday. Yes. You'll know this, but the rest of the room won't. To not credit the opinion of the treating physician, what is required is clear and convincing reasons not to credit the treating physician's opinion, correct? That's technically not my interpretation of the law, Your Honor. The crediting of evidence as true applies to subjective complaints when we look at Smolin indicates that the ALJ needs to cite clear and convincing reasons. But haven't we also said with respect to the treating physician's opinion, an uncontradicted treating physician's opinion, that you need clear and convincing reasons to disregard it? Well, the language in the case law is a little different. I don't know that the application is any different. So when we look at the crediting as true of a treating physician opinion, especially if it's not contradicted, the statute says the opinion of the treating physician is to give controlling weight. There are a couple of district court decisions that have indicated that controlling weight, they intermix the terms controlling weight and clear and convincing. I personally am not sure that that's proper, that you can intermix those two terms. But I do believe the difference between clear and convincing versus controlling is very small. Was the examining treating physician's opinion in this case contradicted by any other medical profession? I do not see any contradiction between any of the treating, other than as to residual functional capacity. You know, the case law says that if that's the only difference, we're not going to consider that a conflict. Other courts I've seen handle it other ways, but I believe that that's pretty well settled based on Lester v. Chater, that if the objective evidence is the same and they're all relying on the same findings, a difference in residual functional capacity is not going to be deemed a conflict. With that understanding, I can say to the Court, I don't believe that there's any conflict in this record. So I think the difference only goes to residual functional capacity. Do you want to save your? Yes. All right. Thank you. We'll hear from the Commissioner. Good morning, Your Honors. My name is Michael Howard, representing the Commissioner in the case of Lopez v. Astruz. Your Honors, to best address some of the questions from the Court today, I'd like to address some of the specific topics that were just discussed in Plaintiff's argument. First, on the issue of the treating physician opinion, Plaintiff's interpretation, as I just stated, was that there is no contradiction between that treating physician opinion and other evidence of record. And we would clearly disagree with that assessment. There are clear conflicts between that treating physician opinion and other evidence. The Commissioner would not even need to cite two treatment notes that could be construed as differing. There's a clear contradiction. Let's say that you're correct on that, that we can find some inconsistencies. Then you have to go to the situation where the ALJ didn't allow the testimony of her daughter, correct? So then if there are those sort of inconsistencies about what her doctors say she can do and what she says she can do, wouldn't her daughter's testimony be really crucial in that situation? How would that error be harmless if it was an error? Well, Your Honor, to respond to your question, I would submit, first, it is harmless. But just to clarify. Why? Tell us why it's harmless. Well, certainly, Your Honor. Well, just to clarify briefly, there is the ALJ did allow the testimony. There is a written statement in the record. So the ALJ did not refuse to admit any evidence of that. But he didn't mention it. The ALJ did not mention it. But the Commissioner's position is that the ALJ stated that he considered all the evidence of record, and so the issue here essentially is that the ALJ did not provide reasons to evaluate that lay witness opinion. And we submit that as harmless. That was our position on that point before the Court's recent case of Molina v. Astru. And the Commissioner recently submitted a 28J letter on the Molina case after that case came down. And the Molina case is very on point with this because Molina talks about harmless error in the context of lay witness testimony. Well, I'd be the first person to admit I love harmless error, all right, because I think when people are in court, about every second they speak, they make an error. And most of them don't matter. But in a situation where you're really relying on the fact that, I mean, this woman has a million things wrong with her. No two ways about that. But the question is, can she do more than her doctors say she can do or whatever? I'm having a hard time seeing why that particular evidence about what she can do isn't really important in this case. Well, Your Honor, I'd submit it's not important in this case because of very fact-specific inquiry as kind of directed by the Court's recent decision in Molina. In Molina, we have a discussion comparing and contrasting different past cases of the Ninth Circuit, and there's a contrast between cases where lay witness testimony, the failure to address it, was not found harmless. And the cases given as examples in Molina are Stout and Robbins. And those were cases where the lay testimony was consistent with other evidence of record, and it was supported, and it was plausible, and then the Court found harmful error there. If we look at the actual lay witness statement in this case, the lay witness is making, the claimant's daughter is making some untenable statements. She says at one point that plaintiff cannot work. She's always on the breathing machine. And I'm closely paraphrasing there. By breathing machine, she's referring to a nebulizer that someone uses for asthma. But why isn't that important with someone that lives with you? I mean, they would know more than a doctor that only sees you occasionally how much you're on the breathing machine. Your Honor, I would disagree under the facts of this case. First of all, the claimant's daughter is her adult daughter who does not live with her. And that is a very significant claim to say that someone's always on a nebulizer breathing machine. But that is clearly inconsistent with the other evidence of record, and that's our crucial point here. Well, then if it's that, if it is, then if you distinguish it, why wouldn't you say I'm not giving weight to this testimony because? I fully agree with Your Honor that the ALJ should have stated that in the decision. Well, and in this case, if that were the only omission or error in the ALJ's decision, I could understand. But the ALJ also has this – she finds Ms. Lopez not credible because he says she doesn't suffer from muscle atrophy. No – it's a big medical record, but as close as I can tell, no – does any physician say that she should be suffering from muscle atrophy? Doesn't the ALJ just decide on his or her own that this is an important issue without any medical support for that at all? Well, Your Honor, I would – I would acknowledge that from my review of the record, it does not appear that any physician questioned plaintiff because she did not have muscle atrophy. But I think there's a distinction here between diagnosing someone with fibromyalgia and acknowledging that muscle atrophy is not significant in order to establish a diagnosis. And then there's a distinction between that line of reasoning and the line of reasoning where we question someone claiming severe, severe physical limitations on their daily activities and whether that would show up in some sort of finding of muscle atrophy. So the commissioner in our brief cited an unpublished Ninth Circuit case affirming that in the context of a fibromyalgia case, it can be proper to consider a lack of muscle atrophy when evaluating the credibility of claims of severe limitations. But in that case – and I don't – I haven't gone back and looked at the briefs, but in that case, wasn't there medical evidence about the significance or lack of significance of muscle atrophy as opposed to the ALJ just deciding on his own after the hearing that it was an important issue? Your Honor, from my – what I can recall about the reading of that case, and of course I don't have the administrative record, but I don't believe that there was necessarily clear evidence about the issue of muscle atrophy and why that would be significant. But I would distinguish the case that plaintiff cites, Reddick v. Chater, on this point. And although that is a published Ninth Circuit case, plaintiff portrays it as showing that you cannot cite the lack of muscle atrophy on this issue. First of all, I'm not sure where plaintiff is getting that in the case of Reddick v. Chater. Their pin site is to the statement of facts. I was reviewing that case again for perhaps the third time this morning, looking for muscle atrophy in the discussion of credibility by the Court, and I did not see it. Well, okay. One of the other things that was alleged to be a negative for the appellant here is that she was not compliant. Why was she not compliant, or how can we glean that from the record? Well, Your Honor, the Commissioner would acknowledge that the ALJ's reasoning on this point was not tied to any specific evidence. And so in the briefing, we conceded that that may have been an error. But nonetheless, it was a harmless error, because the real crux of the ALJ's decision on the issue of credibility is and the real discussion of the evidence occurs in the context of her daily activities and also the issue of whether treatment was effective. But if we keep pulling things out, whether it's not specific enough, and we keep pulling them out, then how do we really, you know, how much is enough, I guess, to support the adverse credibility at that point? Well, Your Honor, I believe that Especially in light, I guess, of what the appellant is alleging, this case could sort of be characterized as the gang that can't shoot straight. I mean, it's been up, down, up, down, and it's been going on how many years? Twelve years or something like that? Number of years. Closer to 15, isn't it? I believe so. So Judge Callahan is asking the question that's bothering me. How many times does the ALJ get to try and get it right before we finally conclude, you've drugged this poor claimant in and out of the courts long enough, it's time to just award benefits and be done with it? Well, if I may first answer the question on credibility and then the question on the remedy. Your Honor was asking about how many errors can we tolerate, essentially. And I believe that question is answered by the case of Carmichael. And the question there is not whether the ALJ would have made a different decision, but whether the decision remains valid. And I believe that would be the key phrase from Carmichael. And I believe the decision here remains valid because the crux of the credibility finding that really specifically discusses the evidence in this case is valid. But to just I'm sorry. You answered Judge Tolman's question. I want to get back to that. So please. Question? Yes. I was hoping to answer your question on the issue of remedy or the issue of remand and the procedural history in this case. This case has, I would acknowledge, has gone on for a while. However, I think if we look back at the procedural history of this case and we look there are two prior before the district court order affirming the commissioner on this appeal. There are two orders of the district court remanding for further proceedings, one in 2002 and one in 2006. And the district court, unfortunately, in both of those orders, was applying the standard of clearing convincing evidence, and not clearing convincing reasons in the evaluation of credibility, but clearing convincing evidence. And I think that's, it would be hard to say exactly if the history of this case would have been different or if it would have taken less time. But I think that's a significant factor. But we have case law that says a period of litigation that lasts four years is long enough. And here we've got a case that's been kicking along here for a decade and a half. I would agree with Your Honor on the assessment of that case law. However, the commissioner's position generally with the issue of the credit as true doctrine, is that. Well, and that, you know, I'm sure you've heard the saying bad facts make bad law. That the commissioner, I think, without saying how I would resolve that issue if I were writing on a clean slate, you know, is making at least a, it's a credible argument that's being made about the credit as true rule. But is this really the case to, I mean, number one, it would have to go en banc to get to the place that you're talking about. Is this really the case to springboard off of with the facts in this case? Under the facts of this case, I believe that's, it's ultimately the court's call, I believe, whether to call an en banc panel. But I think in this case, although we object to the doctrine, if I believe I'm answering your question, it's not necessary to reach the issue in this case. I think first the court should simply affirm the commissioner, as explained for the reasons in our brief. Let's just assume we don't, just for purposes of argument. I understood the appellant to not, I mean, he didn't want to shoot himself in the foot, but I think he was, I think he thought that the court would have to look at the credit as true to get to a point that if it was remanded to calculate benefits. Do you agree with that? I'm, if I'm answering your question, Your Honor, I believe that if the court does look at the credit as true cases and is evaluating and has found harmful error, then I think that even if the court's doing that, under the facts of this case, there's outstanding issues to be resolved. And I think that's a crucial point. That we haven't gotten to in 15 years or whatever? Well, the outstanding issue, Your Honor, would be the lack of a step five finding as to whether she can perform other work in the national economy. And the ALJ's decision at issue did not reach that point. Let me ask about the ALJ's credibility determination. As I understand it, the crux of this credibility determination was that her daily activities indicated that she could work. Fair? I would disagree, Your Honor. A plaintiff does indeed characterize it as that as being the finding. The ALJ, however, the Commissioner's reading of the decision is that the ALJ simply found her daily activities inconsistent with her claims at the hearing and undermining her credibility. Okay. What were the daily activities that the ALJ found inconsistent with her claims? As I understand it, she said, well, I occasionally go to the market. Right? Yes, Your Honor. What else did she say about her daily activities that were inconsistent with her claims of disability? Well, Your Honor, there is the shopping issue, as you noted. I believe it was one to two hours, sometimes twice a week. And beyond that, it was living independently, performing her own household task or chores, driving herself. And those may not be performing it. That's my difficulty. I look at those things in the context of somebody who, without doubt, has COPD and asthma and other illnesses, and I wonder why those cast doubt on her claim that she can't hold a full-time job. She occasionally goes to the market. She's able to care for herself at home. And occasionally she can drive a car. How do those cast doubt on her claims of disability? Well, Your Honor, I would submit that the plaintiff at the hearings characterized herself as very severely physically limited. And if we're looking whether her admissions about her daily activities are inconsistent with those claims, I think the case on point that we saw in the briefing is Bray, which also deals with respiratory impairments of this nature. The plaintiff in this case said that she was severely limited. She was, I think at one point she said she was unable to walk 15 minutes. At one point she said she couldn't lift even a jug of water. And the question is, if this is what plaintiff is claiming at the hearing before the ALJ, that she's capable of doing in the workplace, and it's this very little amount of activities, she's very severely limited. And yet the ALJ looks at the record and sees that other points that she admits, carrying on independently and driving and shopping for one to two hours at a time. If she lives in an area that's not served by any form of public transportation, how else is she going to get to the grocery store on those days when she feels that she's strong enough to shop? And why is that inconsistent with the finding that she couldn't hold down a full-time job? Well, Your Honor, I'd submit it's proper for the ALJ to do or reasonable for the ALJ to do when, under the facts of the particular facts of this case, when the ALJ is merely saying that these activities, the ability where she admits the ability to perform these activities was inconsistent with her hearing testimony. The ALJ did not go farther and say that these daily activities were evidence themselves of an ability to work, which would be a different finding involving the standard discussed in the case of Oren v. Astru, which is a case put forward by Plaintiff. So essentially, Plaintiff's case of Oren v. Astru is talking about a separate issue or another way, I should say, another way of evaluating daily activities. Okay. So we pulled out that she, that it's not, the record isn't adequate to support that she's not compliant. Then there was another, what was the other one we were talking about pulling out? It being the daughter's testimony. Oh, the daughter's testimony. And now if... Muscle atrophy. Muscle atrophy. Muscle atrophy. And then now we have the, she says she can go to the store and drive her car occasionally. So at what point have we pulled out enough things not to support the credibility? Well, Your Honor, I'd submit that if I understand your question correctly... I mean, it's like I'm pulling out things, and when does the foundation collapse? Then you're talking about it's not harmless error. Certainly, Your Honor. Well, the Commissioner, just to clarify, is defending the findings that muscle atrophy... All right. We already talked about that, so don't waste time on that one, so... Certainly. And the daily activities. I just wanted to clarify. Okay. But another credibility finding that I would just mention briefly would be the issue of treatment being effective in relieving her complaints, both respiratory complaints and her pain complaints, which occurred more later. But you're not contending she's cured of COPD? No, Your Honor. But the evidence from the physicians is reasonably clear that her asthma, her COPD, responds to these medications and that she's capable of work, so long as it does not involve respiratory irritants. But to return to Your Honor's question, although there are these errors that we admitted in the brief or that we did not defend in the brief, going back to the case of Carmichael, the ALJ's decision remains valid. And the issue is not whether the ALJ... Let's say you've admitted some, but let's say all of those, let's say just hypothetically, let's say we agree that all the others are problematic. Would you concede at that point, if we believe that, that the record doesn't support that the ALJ should not be affirmed at that point? Well, if I... Just hypothetically, let's say we disagree with you. All of the things that we've pointed out, if we think that those are problems, is that enough to reverse? Well, to answer Your Honor's question, I understand, Your Honor, to be asking essentially if all the reasons supporting the credibility finding are found invalid by the court. Then if that's the court's finding, then certainly the credibility finding has to fall at that point. Okay. Thank you. All right. Thank you. I'd let you go over it a little bit, but I appreciate your answers to our questions. Thank you. Mr. Slepian? Thank you. I'm just going to address the remedy issue for a minute. As the court knows, this is in January. I think we hit the 15-year mark on this case, and there are two prior district court decisions, and now we're here. But what's important to know, if we credit the evidence as true, and in this case, clearly that would indicate a finding of disability, which is authorized under the statute. They have additional remedies. It's not the court's finding that the claimant's disabled and that's it forever. They have continuing disability review processes. They have other means in which they can go and see if there's another resolution that they think is more proper. I guess I'd like to go back to the question that Judge Hurwitz asked you earlier. Do we really need to reach the credit as true doctrine if we simply rely on the fact that the ALJ has had now three opportunities to get it right, still hasn't adequately articulated credible evidence to support his disability determination, and case law says that where a claimant has been subjected to years of litigation and the statute authorizes a court to remand and direct that benefits be paid, do we even need to talk about the credit as true doctrine? It's a good question, Your Honor. All the cases that I have read do discuss the credit as true when they go through the processes you've discussed. The significant factor in some of those cases is the amount of the delay, and there's a great quote. I'm trying to remember if it was in Beneke or Lester, where it's not a game of if it's a defendant case, heads, we win, tails, let's play again. You know, at some point in time, they've had enough chances. The case has to end. Do I believe the court has the discretion to say enough is enough? I'm not going to look at the credit as true doctrine? Yes, I believe that's accurate. I mean, it's almost an equitable remedy at this point, that the government has had more than a fair opportunity to adjudicate this claim, and now we're simply saying no more litigation, just pay her some benefits. Right. I believe it's correct. I don't know of any cases that say that. Thinking off the top of my head, there is statutory policy that the courts are not to make a disability finding, so could that be interpreted more as a penalty? I don't know the answer to that question. Well, I'm just wondering, you know, INS v. Ventura, which Judge Callahan alluded to earlier, suggests in immigration law that we are not to send things back to the Board of Immigration Appeals and tell it to exercise the Attorney General's discretion in favor of finding asylum, but is it significant that the Social Security statute here does provide that a court may, either remand to the agency or direct the award of benefits? In answer to that question, Your Honor, the answer is yes. And the case is, I think, Moisha or Marsha, I think it's Moisha, M-O-I-S-A. I probably cited in my briefs. I can check in my table of contents. It definitely begins with an M. If you want to submit a supplemental citation and give it to the clerk after the argument, that might be very helpful. Okay. No problem. But that case specifically addresses the INS case and talks about the remedy and the ability under Social Security regulations to remand for a computation of benefits. Okay. Thank you both very much. The case is very well argued. And we'll take it under submission, get you an answer as soon as we can.
judges: Tallman, Callahan, Hurwitz